FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                                        :
In re:                                             :        Chapter 11 (Involuntary)
                                                        :
473 West End Realty Corp.                    :        Case No. 14-35211 (CGM)
                                                        :
                                                        :
                           Alleged Debtor.      :
                                                         :
------------------------------------------------------------- X

**MEMORANDUM DECISION DENYING LAROE ESTATES LLC'S REQUEST FOR A STAY PENDING APPEAL**

CECELIA G. MORRIS
CHIEF UNITED STATES BANKRUPTCY JUDGE

  Before the Court is LaRoe Estates LLC ("LaRoe")'s motion for a stay pending appeal of this Court's March 7, 2014 order granting TD Bank, N.A. ("TD") relief from the automatic stay. The Court had previously granted TD relief from the automatic stay in connection with the alleged Debtor's previous voluntary chapter 11 bankruptcy case. The prior case was dismissed shortly thereafter. This involuntary chapter 11 case was filed less than one month later by LaRoe, an alleged creditor with hopes of purchasing the alleged Debtor and its property. The Court granted TD's motion to lift the automatic stay for the second time on March 7, 2014, finding that LaRoe was not able to establish that the alleged Debtor can reorganize within a reasonable time. As LaRoe has not come forward with any evidence demonstrating that this Court's March 7, 2014 order should be reversed on appeal and has not met its burden on this motion, the Court denies its request for a stay pending appeal.

  In conjunction with this motion for stay pending appeal, LaRoe submitted a proposed order to show cause asking the Court to stay the scheduled foreclosure sale, as there are no

grounds to grant LaRoe's request for a stay pending appeal, the Court also denies its request to prevent the sale from occurring as scheduled.

## Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

## Background[1]

The alleged Debtor, 473 West End Realty Corp. ("Debtor[2]"), is the owner of a 1.3 acre parcel of land located in Chester, New York, on which the Debtor operates a private water company (the "Property"). *See* Vol. Pet., 13-36955, ECF No. 1. The Debtor's president and sole shareholder, Steven M. Sherman ("Mr. Sherman"), passed away on September 29, 2013, while Debtor's voluntary chapter 11 case was pending. *See* Local R. 1007-2 Sherman Aff. ¶ 1, No. 13-36955, ECF No. 1. The Debtor's shares now belong to Mr. Sherman's estate. The Property adjoins approximately 300 acres of vacant property, which is also owned by Mr. Sherman's estate. *See* Mar. 4, 2014 Hr'g Tr. 3:14-15, ECF No. 20. Mr. Sherman acquired the Property and the 300 acre lot for the purpose of developing a residential housing subdivision. *See* Mar. 4, 2014 Hr'g Tr. at 11.

TD alleges that the Property and the adjoining 300 acre lot both serve as security for a guarantee made by Debtor for a loan by TD to Mr. Sherman and for a loan by TD to a different corporation, Walden Oaks, Inc. Third Lift Stay Motion ¶ 9, ECF No. 3. The loans matured on July 1, 2007, and TD alleges that no payments have been made thereafter. *Id.* On January 4,

---

[1] All citations to ECF that do not include a case number are to the electronic docket of case number 14-35211.
[2] References to "Debtor" in this Memorandum shall be construed to mean "alleged debtor."

2008, TD brought a foreclosure action against the Debtor in Orange County Supreme Court, which resulted in a judgment of foreclosure in favor of TD dated April 29, 2013. *See* Paxson Aff. ¶ 9, ECF No. 3, Ex. A; Local R. 1007-2 Sherman Aff. ¶ 10, No. 13-36955, ECF No. 1.

On August 30, 2013, the Debtor filed a voluntary chapter 11 case ("First Bankruptcy Case") in an attempt to come to a resolution with TD in the bankruptcy court. *See* Vol. Pet., 13-36955, ECF No. 1. On September 16, 2013, TD filed its first motion seeking relief from the automatic stay, which was denied upon the record of the October 1, 2013 hearing ("First Lift Stay Motion"). *See* First Lift Stay Motion, No. 13-36955, ECF No. 11. On October 16, 2013, TD filed its second motion for relief from the automatic stay ("Second Lift Stay Motion"), which was granted on November 19, 2013, during the First Bankruptcy Case. *See* Second Lift Stay Motion, No. 13-36955, ECF No. 22; Order, No. 13-36955, ECF No. 41. The First Bankruptcy Case was subsequently dismissed voluntarily on January 10, 2014. Dismiss Order, No. 13-36955, ECF No. 47.

Less than one month later, on February 4, 2014, an involuntary chapter 11 petition ("Second Bankruptcy Case[3]") was filed against the Debtor by LaRoe as the sole petitioning creditor. Invol. Pet., ECF No. 1. On February 14, 2014, TD moved for relief from stay in this Second Bankruptcy Case ("Third Lift Stay Motion"). Third Lift Stay Motion, ECF No. 3.

According to the motion, the total amount of $4,933.079.87 was due and owing on the loans as of the petition date, with interest continuing to accrue at a rate of $1,099.47 per day or $32,984.10 per month, plus attorneys' fees and costs and expenses. *Id.* ¶ 11. TD also alleged that no real estate taxes have been paid since before 2007, that TD has advanced the sum of

---

[3] References to the "Second Bankruptcy Case" shall be construed to mean the involuntary petition filed by LaRoe. While no order of relief has been entered in this case, the Debtor has not answered or otherwise responded to the summons within the required timeframe. *See* Summons, ECF No. 2.

$685,137.07 to pay real estate taxes on the properties, and that the real estate taxes continue to go unpaid. *Id.*

LaRoe is allegedly an unsecured creditor of the Debtor in the amount of $2.5 million.[4] *See* Draft App. Br. 8-9, ECF No. 16, Ex. D. LaRoe opposed the Third Lift Stay Motion. Opp., ECF No. 7. TD Bank filed a response to LaRoe's opposition. Resp., ECF No. 8. LaRoe filed an unauthorized sur-reply. Supp. Opp., ECF No. 10. Nancy Sherman ("Ms. Sherman"), Mr. Sherman's widow and the executor of his estate, joined LaRoe in opposing the relief requested by TD.[5] ECF No. 12. After a hearing held on March 4, 2014, the Court granted TD relief from the automatic stay for a second time in four months. Order, No. 13-36955, ECF No., 41.

On March 13, 2014, LaRoe filed a notice of appeal of this Court's order lifting the automatic stay dated March 7, 2014. On March 21, 2014, LaRoe filed a motion for a stay pending appeal, which is currently before the Court. Mot., ECF No. 16. LaRoe argues that if the order is not stayed upon appeal, the appeal will become moot as TD has scheduled a sale of the Debtor's real property on April 7, 2014. *See id.* at 2. LaRoe argues that this Court committed reversible error when it found cause to lift the stay. *Id.* at 3. LaRoe argues that the estate will be irreparably injured absent a stay as the real property is essential to the Debtor's ability to reorganize. *Id.* LaRoe argues that TD would not be harmed as LaRoe would be willing to condition the stay pending appeal on payment of prospective real estate taxes and any other expense, which, if not paid, would cause TD to suffer injury. *Id.* at 4. LaRoe argues that the

---

[4] That LaRoe is a creditor of the Debtor is disputed by the parties. The Court has not made any finding regarding whether LaRoe is a creditor of the Debtor or whether LaRoe is a creditor of the late Mr. Sherman. An explanation of why LaRoe believes it is a creditor of the Debtor is included in its draft appellate brief. *See* Draft App. Br. 8-9, ECF No. 16, Ex. D.

[5] Ms. Sherman's counsel appeared at the hearing and argued in opposition of TD's Third Lift Stay Motion. At the hearing, the Court granted Ms. Sherman permission to docket the written opposition that her counsel brought to the hearing. *See* Memo. of Law, ECF No. 12 (docketed at 4:49 pm on March 4, 2014).

public interest is best served by a continuation of the stay as the Debtor is a utility company supplying water to forty-eight homes.

TD opposes the motion, arguing that LaRoe has no probability of success on the merits, LaRoe would not suffer an irreparable injury, that the public interest would not be harmed, and that TD would greatly suffer if the stay were granted. Opp., ECF No. 17.

LaRoe filed a reply to TD's opposition. *See* Reply, ECF No. 19.

## Summary of the Law

A movant seeking a stay pending appeal under Federal Rule of Bankruptcy Procedure 8005 must demonstrate (1) that he would suffer irreparable injury if a stay were denied; (2) that other parties would suffer no substantial injury if the stay were granted; (3) that the public interest favors a stay; and (4) that there is a substantial possibility of success on the merits of movant's appeal. *See Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1992). In *Hirschfeld*, the Second Circuit eliminated the more onerous requirement of "likelihood of success on appeal." *Country Squire Assocs. of Carle Place, L.P. v. Rochester Cmty. Sav. Bank (In re Country Squire Assocs. of Carle Place, L.P.)*, 203 B.R. 182, 184 (B.A.P. 2d Cir. 1996). The "substantial possibility of success" test is considered an intermediate level between "possible" and "probable" and is "intended to eliminate frivolous appeals." *Id.* Although some courts in the Second Circuit require that each element be satisfied, "the Second Circuit has consistently treated the inquiry of whether to grant a stay pending appeal as a balancing of factors that must be weighed." *ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 347 (S.D.N.Y. 2007).

The movant's burden is a "heavy" one. *In re Adelphia Commc'ns Corp.*, 333 B.R. 649, 659 (S.D.N.Y. 2005). LaRoe, as the moving party, "must show 'satisfactory' evidence on all

four criteria." *Turner v. Citizens Nat'l Bank of Hammond (In re Turner)*, 207 B.R. 373, 375 (B.A.P. 2d Cir. 1997) (internal quotation omitted). Moreover, if the movant "seeks the imposition of a stay without a bond, the applicant has the burden of demonstrating why the court should deviate from the ordinary full security requirement." *In re Gen. Motors Corp.*, 409 B.R. 24, 30 (Bankr. S.D.N.Y. 2009) (internal quotation and citation omitted).

1. <u>Success on the Merits</u>

In *Mohammed v. Reno*, the Second Circuit followed the D.C. Circuit and Sixth Circuit in holding that the necessary level or degree of possibility of success will vary according to the court's assessment of the other stay factors. 309 F.3d 95, 101 (2d Cir. 2002). For example, a stay might be granted where the likelihood of success is not high but the balance of hardships favors the applicant, or where the probability of success is high and some injury has been shown. *Id*. "As the Sixth Circuit has explained, 'The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff[ ] will suffer absent the stay. Simply stated, more of one excuses less of the other.'" *Id*. (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)).

Success on the merits, in this instance, is unlikely if not impossible. LaRoe argues in its draft appellate brief that this Court committed reversible error by concluding that there was cause to lift the stay. Mot. ¶ 8, ECF No. 16. LaRoe does not make any actual legal arguments for this prong of the test in its motion seeking a stay pending appeal; instead LaRoe incorporates its draft appellate brief and attaches same as an exhibit. *Id.* ("LaRoe has drafted its appeal brief which sets forth the various reasons why it believes that this Court committed reversible error."). In the attached draft brief, LaRoe argues that this Court did not take evidence at the March 4, 2014

hearing, which LaRoe believes was required. Additionally, LaRoe argues that the Court had a duty to consider the *Sonnax* factors.

In its opposition, TD argues that there are no facts in dispute which would require an evidentiary hearing. TD argues that *Sonnax* is not applicable to the appeal as TD was not seeking to lift the stay in order to litigate in another forum. Rather, TD moved under § 362(d)(2) arguing that there was not equity in the property and that the property was not necessary to an effective reorganization. TD argues that since the Court lifted the stay under § 362(d)(2), lack of adequate protection was not relevant to the inquiry as that is one type of "cause" under § 362(d)(1).

The Court agrees with TD. LaRoe has offered various arguments for why the Court should not have granted stay relief to TD—all of these arguments are absolute red herrings.

LaRoe's first of many red herrings is that the Court should have considered the *Sonnax* factors when considering whether to lift the automatic stay and that the Court improperly considered LaRoe's ability to pay adequate protection.

Section 362(d) sets forth four distinct tests for bankruptcy courts to consider when ruling on a motion to lift the automatic stay. *See* 11 U.S.C. § 362(d)(1)-(4). A bankruptcy court can conduct both an adequate protection analysis and an analysis of the *Sonnax* factors when considering whether to lift the automatic stay pursuant to § 362(d)(1).[6] *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990) ("Because the instant case concerns a stay of a judicial proceeding, only Section 362(d)(1) is applicable."); *In re Residential Capital, LLC*, 2012 WL 3249641, at *3 (Bankr. S.D.N.Y. Aug. 7,

---

[6] Section 362(d)(1) states: "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
(1) for cause, including the lack of adequate protection of an interest in property of such party in interest[.]"

Page **7** of **18**

2012) (explaining that the *Sonnax* factors are used to help a bankruptcy court determine whether cause exists, under § 362(d)(1), to lift the automatic stay to allow prepetition litigation to continue in another forum).

This Court's order dated March 7, 2014, which is the subject of LaRoe's appeal, terminated the automatic stay pursuant to § 362(d)(2), not (d)(1). *See* Order, ECF No. 13. Neither *Sonnax* nor adequate protection should be considered to determine whether to lift the automatic stay pursuant to § 362(d)(2). Section 362(d)(2) states:

> On request of a party in interest and after notice and a hearing, the court *shall* grant relief from the stay . . . with respect to a stay of an act against property under section (a) of this section, if—
> (A) the debtor does not have equity in the property; and
> (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2) (emphasis added); *see also Timbers*, 484 U.S. at 375 ("[Section] 362(d)(2) expressly provides a different standard for relief from a stay."). LaRoe did not dispute that the Debtor lacks equity in the property. *See* Opp. 22, ECF No. 7 ("LaRoe would agree that there is no equity in the 473 Property . . . ."). Thus, subsection (A) of this test was not disputed by the parties and the Court need not have made a finding regarding equity.

In its draft appellate brief, LaRoe cites to and quotes from *Empire Enters., Inc. v. Koopmans (In re Koopmans)*, 22 B.R. 395, 407 (Bankr. D. Utah 1982) in support of its argument that the property is necessary for an effective reorganization. *See* Draft App. Br. 19, ECF No. 16, Ex. D (citing *Koopmans* for the premise that "[p]roperty is necessary for an effective reorganization 'whenever it is necessary either in the operation of the business or in a plan, to further the interests of the estate through rehabilitation or liquidation.'"). Such an argument borders on being a violation of Federal Rule of Bankruptcy Procedure 9011 as the Supreme Court has set forth the appropriate standard for determining whether property is necessary for an

effective reorganization in 1988, several years after *Koopmans* was decided. *See United Sav. Assoc. of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 375 (1988).

In *Timbers*, the Supreme Court stated that "[o]nce the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the *debtor* to establish that the collateral at issue is 'necessary to an effective reorganization.'" *Id.* (emphasis in original). The Court went on to state that:

> What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*. This means, as many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time."

*Id.* at 375-76 (emphasis in original). It is of no accord that the involuntary petition had only recently been filed. The Supreme Court has made clear that bankruptcy courts are required to grant relief from stay during the exclusivity period if the Debtor lacks "any realistic prospect of effective reorganization." *Id.* at 376.

The Court considered whether the Debtor had any possibility for an effective reorganization at the March 4, 2014 hearing, just as it had at the November 6, 2013 hearing during the First Bankruptcy Case. There are several reasons why the Court concluded that the Debtor does not have a reasonable possibility of an effective reorganization, including its inability to fund a plan and its inability to confirm a plan.

During the First Bankruptcy Case, TD filed the First Lift Stay Motion on September 16, 2013, just a few weeks after that case had been filed. *See* Mot., No. 13-36955, ECF No. 11. The Court denied that motion on record of the October 1, 2013 hearing. TD then filed the Second Lift Stay Motion on October 16, 2013. *See* Mot., No. 13-36955, ECF No. 22. At the hearing to consider this Second Lift Stay Motion, the Court had the benefit of Debtor's September

operating report, which showed that the Debtor had $391.27 at the end of the month and a net cash flow of negative $7.95 that month. *See* Sept. Op. Rpt., No. 13-36955, ECF No. 33. Additionally, the Court learned at that hearing that the Debtor did not have enough cash flow to pay its post-petition taxes that had come due. *See* Nov. 6, 2013 Hr'g Tr. 8:2-7 ("We are probably not able to pay the taxes today without an infusion of cash.").

By the time this Court considered the Third Lift Stay motion the Debtor's October 2013 and November 2013 operating reports were filed in the First Bankruptcy Case. In October 2013, the Debtor had $2,179.79 in cash at the end of the month and had a net cash flow of $1,788.51. *See* Oct. Op. Rpt., No. 13-36955, ECF No. 45. In November 2013, the Debtor had $3,397.28 at the end of the month and had a net cash flow of $1,217.50. *See* Nov. Op. Rpt., No. 13-36955, ECF No. 46.

Attached as an exhibit to the Third Lift Stay Motion is the judgment of foreclosure and sale awarding TD well over two million dollars, plus interest and expenses. By the time the Second Bankruptcy Case was filed, TD alleged that it was owed a total amount of $4,933,079.87, with interest continuing to accrue at the rate of $1,099.47 per day, or $32,984.10 per month, plus attorneys' fees, and costs and expenses. *See* Third Lift Stay Motion ¶ 11, ECF No. 3.

LaRoe argues that the amount owed to TD should not matter as TD holds improper mortgages. *See* Draft App. Br. 18, 25, ECF No. 16, Ex. D. This is another red herring. Even if it were true that the mortgages are improper, this Court could not invalidate TD's judgment of foreclosure. The Court is prohibited from "reexamin[ing] the issues determined by the judgment itself." *See Heiser v. Woodruff*, 327 U.S. 726, 736 (1946); *see also In re Jones*, 2011 WL 917849, at *5 (Bankr. D. Mass. Mar. 15, 2011) ("[W]here a judgment is not invalid—does not, for fraud or want of jurisdiction, lack the force of a judgment—a bankruptcy court may not

reexamine the issues it determined."). Thus, for purposes of this bankruptcy proceeding, the Court is bound by the judgment of foreclosure and cannot reexamine the underlying mortgages. This judgment of foreclosure makes it implausible that the Debtor would be able to fund a feasible plan of reorganization.

Neither LaRoe nor the Debtor was able to demonstrate to the satisfaction of the Court that a feasible plan was reasonably possible in this case. *See Timbers*, 484 U.S. at 375 (stating that the burden shifts from the moving creditor to the debtor, or here the petitioning creditor, to demonstrate a debtor's ability to reorganize). Debtor and LaRoe had since August 30, 2013, the date that the First Bankruptcy Case was filed, to provide the Court with a plan of reorganization. No plan, not even an unconfirmable plan, has ever been filed.

LaRoe argues that it is too early to know whether a plan could be confirmed as the Court does not yet know the universe of claims that will be filed. This is also a red herring. On a motion for relief from the automatic stay, the Court did not need to decide that the Debtor could never confirm a plan under any possible scenario; rather, the Court need only to have considered whether the Debtor had "a reasonable possibility of a successful reorganization within a reasonable time." *Id.* Here, the Court concluded that there is no reasonable possibility of a successful reorganization within a reasonable time since TD will control the majority of every voting class under any plan that Debtor could reasonably propose.

When making its determination on the Third Lift Stay Motion, the Court has the benefit of having presided over the First Bankruptcy Filing, in which it was clear that the Debtor could not reorganize within a reasonable time and without winning significant legal battles. In the schedules filed in the First Bankruptcy Case, Debtor listed only three creditors: TD, LaRoe, and Mr. Sherman. At the hearing held before the Court on November 6, 2013, in the First

Bankruptcy Case, Debtor's counsel admitted that confirming a plan was a "long shot" and that there would probably be a "1129(b) issue." *See* Nov. 6, 2013 Hr'g Tr. 7:5, ECF No. 50; *see also id.* at 6:12-14 ("[I]t appears that the bank's claim would be the largest unsecured claim at that point and then we're dealing with an 1129(b) issue.").

Section 1129(b) is often referred to as the "cram down provision" as it gives a debtor the power to confirm a plan over the opposition of a creditor. *See* 11 U.S.C. § 1129(b); *see also In re 500 Fifth Ave. Assocs.*, 148 B.R. 1010, 1017 (Bankr. S.D.N.Y. 1993). "A class of claims accepts a plan if more than one half in number and at least two-thirds in amount of claims voting in a class favor the plan." *Id.* (citing 11 U.S.C. § 1126(c)). In this case, TD would have its own secured class in an amount up to the value of its secured interest in the Debtor's real property. LaRoe has submitted an appraisal valuing Debtor's real property at $71,500. *See* Supp. Opp., ECF No. 10. Thus, TD would hold a secured claim in the amount of $71,500 and an unsecured claim in the remaining amount of the debt owed to it by the Debtor or approximately $4,861,579.87.[7] Even assuming that LaRoe is a creditor of the Debtor, which TD disputes, it would hold an unsecured claim in the amount of $2.5 million. *See* Invol. Pet. at 1; *see also* Draft App. Br. 8-9, ECF No. 16, Ex. D. Thus, TD would control any class of unsecured creditors and the plan could not be confirmed over TD's objection.

At the hearing held by this Court on March 4, 2014, Ms. Sherman, through her counsel, asserted several scenarios that she believed could result in a confirmed plan. Some of these scenarios included appeals to the Second Circuit, sub-divisions of the property, and coercing TD into negotiating more favorable terms with the Debtor. *See* Mar. 4, 2014 Hr'g Tr. 10:1-3 ("MR.

---

[7] Although there was some argument amongst the parties at the November 6, 2013 hearing that TD's lien did not attach fully to the Debtor's real property, the judgment of foreclosure appears to give TD a security interest for the full amount of the judgment in that property. *See* Judgment of Foreclosure at 3, ECF No. 3, Ex. E ("[T]he '473 Property' shall be auctioned <u>first</u> . . . .") (emphasis in original). The Court is bound by the decision of that court.

DIEDERICH: . . . I'm requesting in my papers that Your Honor just give some period of time so that we can try to work something out with the bank and the creditors."); *id.* at 10:16-24 ("MR. DIEDERICH: . . . My client -- I was involved, really, in the fighting of the town who has prevented the subdivision development from going forward -- . . . -- for a number of years. Where that is right now, Your Honor, is in two weeks I'm arguing [a takings] case in the Second Circuit on this case."); *id.* at 11:17-19 ("MR. DIEDERICH: . . . So we've been litigating, trying to get the town to allow the approval. . . . So basically, the subdivision application process is on the verge of being completed if only my client didn't die and right now if TD Bank and some of the creditors -- I spoke with my client's former consultants, the engineer and the planner, and if we could be involved in a win/win situation we could get this subdivision approval which would make this property a lot more valuable for everyone."); *id.* at 11:19-21 ("MR. DIEDERICH: Well, Your Honor, if TD Bank were to work with us, according to the consultants probably even a few months would allow for a preliminary approval but the consultants would have to be on board."); *id.* at 14:8-17 ("MR. HASPEL: I just want the Court to be aware that my client has talked to the engineers and the planners and my client is willing to pay them to complete the job, too, but that's just -- MR. DIEDERICH: The problem with that, Your Honor, is that the way I view it, if this property goes to a third -- an outside purchaser, the grandfathering that's intended on the zoning application -- it took my client ten years -- you know, fourteen years to get to this point in time. If a new buyer comes in, that buyer is starting from square one.").

In fact, Ms. Sherman essentially admitted that the filing was necessary to stay the sale and was essentially a stall tactic to force TD into negotiating with the Debtor. *Id.* at 16:19-21 ("MR. DIEDERICH: The way the bank can be paid, Your Honor, is for the bank to work with the estate in getting preliminary approval."); *id.* at 16:24-17:6 ("MR. DIEDERICH: Your Honor,

I think what we're asking for here is asking you to at least consider the papers and to allow some delay so that there can be some discussions between the parties . . . .").

The Court inquired several times about a possible time frame for when these scenarios might result in a bankruptcy plan of reorganization and no party was able to give even an estimated timeframe. *Id.* at 12:15-17 ("THE COURT: Well, it may have value but how are you going to prove it all? Again, I hear ifs here and I know there are ifs but what's your time frame?"); *id.* at 13:19-22 ("MR. DIEDERICH . . . [T]he bank's representatives they asked me, well, what's the time frame that you can get us an approval. . . . THE COURT: I asked you that same question."); *id.* at 15:9 ("THE COURT: I haven't heard a time line either."); *id.* at 17:18-18:4 ("MR. DIEDERICH . . . I've talked to TD Bank, you know, would that work for them. They said to me, give us a time proposal. THE COURT: I did, too, and you said you've got to talk to the bank and so you did talk to the bank. MR. DIEDERICH: Yes, and I'm still trying to talk to the bank which is why I'm here, Your Honor. This is a method of trying to get -- you know, even if Your Honor could direct mediation. I think any kind of dialogue would assist because I think the bank -- THE COURT: You're in a negotiation technique. You're not in a bankruptcy case."). Ms. Sherman failed to show that the Debtor had "a reasonable possibility of a successful reorganization within a reasonable time." *Timbers*, 484 U.S. at 375-6.

In its reply, LaRoe harps on its contention that there is not yet enough evidence to conclude whether the Debtor can ultimately confirm a plan. *See* Reply at 1-2, ECF No. 19. This is yet another of LaRoe's red herrings. It was not TD's burden to show that Debtor had no possibility of reorganizing. Rather, it was LaRoe's burden, as the party opposing the motion, to bring forth evidence demonstrating that the Debtor had "any realistic prospect of effective reorganization." *Timbers*, 484 U.S. at 376.

LaRoe has failed to show a probability of success on the merits.

2. <u>Irreparable Injury to Appellant</u>

LaRoe argues that without the stay, the Debtor's property will be sold and Debtor will be unable to reorganize.  Mot. at 3, ECF No. 16.  TD argues that LaRoe will not be harmed by the issuance of the lift stay order as the sale of property is a consequence of its rights under the judgment of foreclosure. Opp. at 4, ECF No. 17.  Irreparable harm must be "neither remote nor speculative, but actual and imminent." *Adelphia*, 361 B.R. at 347 (citing *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989).  An injury that may be fully remedied by monetary damages does not constitute irreparable harm.  *In re Atkinson*, 2012 Bankr. LEXIS 5741, at *10 (Bankr. E.D.N.Y. Dec. 11, 2012) (quotations and citations omitted).  Irreparable harm should only be found where there is a risk of mooting "*significant* claims of error." *Adelphia*, 361 B.R. at 348 (emphasis in original).

There is a division among bankruptcy courts in this Circuit as to whether mootness of an appeal is enough to show injury. *Compare id.* ("The Lift Stay Order only authorizes the Trustee to exercise his rights under the Judgment; accordingly, the Lift Stay Order did not grant any new rights or authority to the Trustee that he did not already have prior to the filing of [debtor's] Chapter 13 case."); *In re Connelly*, 195 B.R. 230, 235 (Bankr. W.D.N.Y. 1993) ("As to the prospect of irreparable injury to the Debtor, property . . . is sold at foreclosure sales every day when debtors fail to perform their agreements with mortgage holders and when the facts and circumstances do not warrant a bankruptcy court staying such a foreclosure sale for the benefit of the debtor's creditors or a debtor.") *with Country Squire*, 203 B.R. at 183 ("It is apparent that absent a stay pending appeal, the foreclosure sale will proceed and the appeal will be rendered moot. Obviously, that result would be the 'quintessential form of prejudice' . . . .").

Without resolving the split of authority, the Court notes that LaRoe may arguably suffer harm if this stay pending appeal is not granted as its appeal will most likely be rendered moot by the foreclosure sale.

3. <u>Injury to Party Opposing Stay</u>

In addition to showing irreparable harm, the party seeking a stay must also establish that the non-moving party or other parties will not suffer substantial harm if the stay is granted. In other words, the moving party must show that the balance of harms tips in favor of granting the stay. *Adelphia*, 361 B.R. at 347-49 (footnotes omitted).

LaRoe argues that TD will not be harmed because "LaRoe is willing to condition the continuation of the automatic stay upon its payment of prospective real estate taxes and any other expense which if not paid would cause TD Bank's position in the Debtor's real estate to deteriorate." Mot. at 4, ¶ 14, ECF No. 16. TD argues that it will suffer substantial harm from delaying its foreclosure sale. *See* Opp., at 5, ECF No. 17.

LaRoe has not posted a bond and has not provided the specific amount that is able to pay to TD while its appeal is pending. Under the judgment of foreclosure, TD claims that it is entitled to interest at a rate of $1,099.47 per day or $32,984.10 per month, plus attorney's fees and expenses, which continue to accrue. While an undersecured creditor is not entitled to interest as adequate protection,[8] the Court is not now determining whether the stay must be lifted. *See Timbers*, 484 U.S. at 374. The stay has already been lifted and TD is legally permitted to go forward with its foreclosure sale at any time. There is no doubt that a stay pending appeal, which will cause "increased interest accruing on the judgment and real estate tax debts and additional expenses to be incurred" by TD, "which may not be recoverable based on

---

[8] Adequate protection is not relevant to this motion as discussed *supra*.

the value of the collateral, would result in substantial harm" to TD. *In re Connelly*, 195 B.R. 230, 235 (Bankr. W.D.N.Y. 1993).

4. Public Interest

The final factor considers "the interest of third-parties who act in reliance of the bankruptcy court's ruling." *Beneficial Homeowner Serv. Corp. v. Moreau (In re Moreau)*, 135 B.R. 209, 215 (N.D.N.Y. 1992). "The law permits the stay pending appeal of an order where the high standards for a stay are met. But where, as here, those standards are not met, a stay pending appeal would injure the interests of sound case management in the bankruptcy process, and as a consequence, would also injure the public interest." *In re Taub*, 2010 WL 3911360, at *6 (Bankr. E.D.N.Y. Oct. 1, 2010).

LaRoe argues that Debtor is operating a utility company, which supplies water to forty-eight homes and that their interest is best served by allowing the Debtor to continue its operations. TD argues that LaRoe has not shown any actual harm that will result if it ceases its operations. TD also argues that the New York State Public Service Commission ("PSC") was a party to the state court foreclosure action and that the PSC will remain in regulatory control over the property and the foreclosure sale purchaser, pursuant to the terms of the judgment of foreclosure.

LaRoe's blanket assertions that the residents will be harmed does not amount to evidence, as is LaRoe's burden. *Turner*, 207 B.R. at 375 (stating that the movant "must show 'satisfactory' evidence on all four criteria") (internal quotation omitted). The Court has no evidence that the public interest would be harmed by failing to issue a stay pending appeal.

As the foregoing analysis show, even if the Court assumes LaRoe will be harmed if its appeal is mooted, LaRoe has not shown a likelihood of success on the merits or harm to the

public interest and TD will be substantially harmed by the granting of a stay.  The balance of factors tips in favor of TD.

## Conclusion

LaRoe's request for a stay pending appeal and its request to stay the pending foreclosure sale are denied for the foregoing reasons.  The Court will issue a separate order consistent with this decision.

Dated: April 3, 2014
Poughkeepsie, New York

/s/ Cecelia G. Morris
***Chief United States Bankruptcy Judge***